**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**NATIONAL BELLAS HESS, Inc., Respondent.**

**No. 15034.**

United States Court of Appeals
Eighth Circuit.

Sept. 8, 1955.

H. Brian Holland, Asst. Atty. Gen., and Harry Marselli and Ellis N. Slack, Sp. Asst. Attys. Gen., for petitioner.

Philip Zimet and Herman A. Benjamin, New York City, of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for respondent.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Our opinion in this case is reported in 220 F.2d 415. A petition for rehearing was duly filed thereto by the Commissioner of Internal Revenue, but we chose to allow our action upon the petition to wait until the disposition of another reorganization tax-case, which was then pending before us. Decision in the latter case, however, has ultimately proved to turn on other questions.

The petition for rehearing is directed at that portion of our opinion, 220 F.2d at page 419, which states: "Here, equally, we think that the Tax Court could properly appraise the sale of stock made to the public, after the transfer transaction was completed, as not having had any intended controlling relationship on whether the exchange of property and stock between the Receivers and the new corporation would have been carried out. There was nothing in the offer made by the organizers to indicate either expressly or impliedly that the parties were dealing upon the intended basis that this was required to be done and would be able to be accomplished."

Our opinion further said: "It may be assumed that it was perhaps understood that the organizers were going to attempt to sell stock to the public, but whether and to what extent and over what period of time this could be done was necessarily, under the economic conditions obtaining in 1932, a bit of a gamble. That gamble the organizers of the new corporation obviously were hopefully willing to make, but in practical evaluation the Tax Court could hardly be required to hold that it was so interdependently linked in the minds of the parties as of controlling relationship in the exchange of assets and stock made and on the matter of control that would be involved in the situation that the transaction between the Receivers and the organizers had hinged thereon." Ibid.

The petition for rehearing calls attention to the fact that the order of the court approving the transfer of the old corporation's assets to the new corporation for 300,000 shares of the latter's capital stock had also contained a provision for the making of a lease by the Receivers with the new corporation on a building in Kansas City, Missouri, owned by a subsidiary of the old corporation, which lease was required by the court to include a clause that, among other things, it should constitute a lease default on the part of the new corporation, "Unless on account of subscription to its capital stock at least Two hundred and fifty thousand ($250,000) Dollars shall actually be paid into the treasury of the corporation on or before December 15th, 1932." It was further provided that, for this or any other default under the lease, "the receivers may * * * move before the (court) for an order summarily determining the lease and directing the return by the corporation to the receivers of all of the assets [transferred to the corporation for the shares of stock]."

This lease provision, now being urged as indicative that the parties obligation-

ally intended that other stock should be issued and sold, had not been purported to be relied upon or mentioned in the Commissioner's brief here, although a reference was made to it by counsel in the course of the oral argument. We shall, however, to avoid any possibility of revenue injustice, engage in consideration of it, the same as if it had been properly urged by the Commissioner from the start.

Giving the lease provision then, for present purposes, the effect to which the Commissioner contends that it is entitled on its face, as a constituent element of the reorganization situation, the result simply is to transform the situation into one where it would be capable of being said that the parties had made it an interdependent step in the reorganization plan or transaction that the new corporation should raise $250,000, for treasury or working-capital purposes, through the obtaining of subscriptions for and issuing of that amount of its capital stock.

It will be observed that the obligation to raise these funds and issue stock therefor was not a momentary or immediate one. It was something which the new corporation was not obliged to accomplish until six months after the court's order authorizing the reorganization was made. And no stock interest, either legal or equitable, was thereby established in any one, such as might perhaps be argued to have been intended to have a direct bearing in the minds and relations of the parties on the reality of present control, if the sale had been required to be made to some particular persons, or if an obligation had been assumed, in connection with the reorganization plan, by some particular persons to buy. Thus, there was not anything which could be said to require the conclusion that the Receivers were not, as a matter of law, "immediately after the transfer * * * in control of the corporation", under the reorganization test imposed by § 112(i) (1) (B) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, p. 513.

As we have said, since the obligation to obtain subscriptions and issue $250,-000 additional stock was a general one and one which the new corporation was given six months to perform, we do not think that it is required to be held as a matter of law that such transitoriness or unsubstantiality of control existed as to make the situation on its face one where the Receivers were not "immediately after the transfer * * * in control of the corporation." Equally, on an attempted factual appraisal or evaluation of the situation, we do not feel that it soundly can be said that the control thus created in the Receivers was meant or viewed by the parties to be of such transitoriness or unsubstantiality as to make it devoid of actual reality in relation to the corporation.

The 300,000 shares of stock issued to the Receivers constituted the entire original issue of capital stock on the part of the new corporation. And, as pointed out in our opinion, 220 F.2d at page 417, the Receivers were given a veto power, for a period of five years, over any increases in officers' salaries—a fact which certainly tended to indicate that their ownership of stock and their relationship to the corporation were meant to be, not illusory, but real. Again, the provision which the court made in its order for a right in the Receivers to request action from the court, in case of any default on the part of the new corporation, would also seem to suggest that the situation was designedly being left where there would exist, not transiently but for some time, a whiphand over the corporation in relation to the Receivers' stockownership. It further may be noted that, while the new corporation was of course left free to sell more than 250,000 shares of additional stock, its obligation under the reorganization plan or transaction was limited to 250,000 shares only, which, insofar as the obligation and its consequence could be claimed to constitute an interdependent step in the reorganization situation, would not deprive the Receivers, with their 300,000 shares, of voting control of the corporation.

We see nothing in the lease provision urged that leads us to doubt in any way the propriety and soundness of our original conclusion that there was no such transitoriness or lack of substantiality in the control which came into the Receivers' hands, as to require it, as a matter of legal or factual reality, to be held that the Receivers were not, within the meaning of the statute, "immediately after the transfer * * * in control of the corporation."

The petition for rehearing is accordingly denied.